# Indian Refining Co. v. Baker.

Nov. 15, 1940.

S. M. Ward, Judge.

Napier & Napier, James T. Nielsen, Perry N. Booth and Alexander G. Booth for appellant.

B. W. Baker and D. G. Boleyn for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On July 18, 1932, a written contract was entered

into between appellee and plaintiff below, Ted Baker, and appellant and defendant below, Indian Refining Company, whereby plaintiff agreed to serve defendant in selling and disposing of its products, consisting chiefly if not entirely of gasoline and other oil products, throughout Perry and adjoining counties, the location of the agency to be in Hazard, Kentucky. The contract was more or less lengthy in the detailed incorporation of specific obligations assumed and agreed to by each party to it. In August, 1933, the contract was renewed upon practically the same terms and plaintiff conducted the agency under its terms until September 1, 1936, when a second renewal contract was entered into between the parties. Each of the contracts contained practically the same provisions in defining the duties and obligations of the parties thereto covering the dispute herein involved; but the last renewal referred to the parties as "consignor" (defendant ' Indian Refining Company) and "consignee" (plaintiff, Ted Baker). They operated under it until it was mutually cancelled (as by its terms might be done) on August 31, 1937— the cancellation being in writing and subscribed by both parties.

After the cancellation defendant rendered to plaintiff a statement of the balance due him as commission and compensation provided for in the contract whereby it found that he was entitled to the amount of $822.67, which was paid to him. However in that statement he was charged with the sum of $336.89, being 10 per cent. of all outstanding accounts receivable, the amount of which was $3,368.93. Plaintiff accepted the $822.67 at the time it was paid, but later filed this equity action in the Perry circuit court against defendant to recover from it the 10 per cent. ($336.89) retained by defendant in the settlement so made, upon the ground that it was not entitled under the terms of the contract to retain that sum from him. That contention was put in issue by defendant's pleading, followed by preparation by agreement, and a submission for trial by the court without intervention of a jury was made, the issues having theretofore been transferred to the ordinary docket, when the court rendered judgment for plaintiff for $286.35. Defendant's motion for a new trial was overruled, followed by its moving this court for an appeal, accompanied with a transcript of the record.

A number of collateral issues were injected into the case which, according to our view, have no place therein, since the rights of the parties are determinable exclusively by the terms of the contract. Section 3 of its fourth clause is thus phrased: "Consignee's commission account with Consignor will be credited with commissions upon all current sales and transfers handled by or through Consignee, computed at the rates and in accordance with the provisions of this agreement, and payment thereof made as follows: 'At the close of each month and at termination of this agreement, Consignor shall withhold from Consignee's commission a sum equivalent to *ten percent of the then existing Accounts Receivable "A"* and shall pay Consignee a sum equivalent to commission on all sales made by Consignee and all transfers handled through Consignee during the previous months, plus the ten percent of Accounts Receivable "A" withheld at the close of the next preceding month, less deductions made in accordance with the provisions of this agreement. In event of *termination* of this agreement, Consignee shall not be entitled to receive thereafter, or Consignor obligated to pay, (a) any of the amount withheld in accordance with this provision and/or (b) *any commissions for sales, the proceeds of which have not been collected prior to date of termination.'*" (Our emphasis.)

Section (4) (a) of the fourth clause of the contract says: "The term 'Accounts Receivable (A)' as used herein, means those accounts current and delinquent less than four months;" while Section (4) (b) says: "The term 'Accounts Receivable (B)' as used herein means those accounts not collected when four months past due." Other terms of the contract prescribe for the financial rating of plaintiff's customers and for the limitation of credit which he may extend to them as measured by such rating. The credit that he may extend to any customer is measured by his rating is provided for in the contract, with a stipulation that if plaintiff should exceed that authority and extend credit beyond the authorized amount—as so based on the customer's rating—then he became personally liable to defendant for the excess of the credit over and above the authorized amount. But it was nowhere stipulated that defendant released or relinquished its claim upon the customer for the unauthorized credit extended to him by

plaintiff as the "consignee" in the contract. The only effect of that stipulation is to make plaintiff, as consignee in the contract, personally liable to defendant for such excess credit, but it does not cancel or take away any of the rights of defendant to still look to such customer for the payment of the account.

The parties operated under the contract pursuant to the above provisions of Section (3) of its fourth clause, supra, until the day of its cancellation, at which time this provision therein came into operation: "In event of termination of this agreement, Consignee shall not be entitled to receive thereafter, or Consignor obligated to pay, (a) any of the amount withheld in accordance with this provision and/or (b) *any commissions for sales, the proceeds of which have not been collected prior to date of termination."* (Our emphasis.) It is our conclusion that the rights of the parties are to be determined by the interpretation to be put on that language. Plaintiff's counsel appear to be confused as to what is to be termed "Accounts Receivable (B)" under the provisions of the contract, and they seem to argue that all accounts made by plaintiff, as consignee in the contract, above and beyond the authorization, supra, became ipso facto "Accounts Receivable (B)" when the truth is that all accounts—whether in excess of authority conferred or within that authority—are "Accounts Receivable (A)" until they become past due more than four months—at which time all accounts ipso facto become "Accounts Receivable (B)." The crucial sentence, supra, from Section (3) of clause four of the contract, supra, deals exclusively with what shall happen when the contract is terminated which happened in this case. In that event the inserted sentence says that the "Consignee shall not be entitled to receive thereafter, or Consignor obligated to pay", any of the amount withheld by it, as is provided for in monthly settlements, nor shall he be entitled to receive "any commission for sales, the proceeds of which have not been collected prior to date of termination," which means that no commission shall be allowed to him upon the termination of the contract upon any outstanding and uncollected accounts, be they "Accounts Receivable (A)" or "Accounts Receivable (B)." The language is plain and unambiguous and not susceptible to any confusion except by the unauthorized interpretation, supra, made by

plaintiff's counsel as to (1) what constitutes "Accounts Receivable (B)" under the contract, and (2) that plaintiff agreed in the contract to personally assume and pay all unauthorized credit accounts which counsel insists and interprets as being tantamount to a transfer of those accounts by defendant to plaintiff who assumed them whereby it lost all right, title and claim thereto as against the customers. But neither of those contentions of counsel (1) and (2) is sustainable since neither of them is warranted by any language contained in the contract.

Counsel for plaintiff, however, insist that in any event the provision for the retention by defendant of the ten per cent. of outstanding accounts provided for upon the termination of the contract is in the nature of a penalty, and should not be enforced, and which proposition counsel seek to establish by the citation of a number of cases, some of which are domestic ones; but to say the least of it, it is extremely doubtful if the ten per cent. retention provision may be construed as a penalty or a forfeiture within the rule contended for. More appropriately it should be classified as only a part of the consideration of the contract and inserted therein for the purpose of creating a fund to meet the expense of the collection by defendant of such outstanding and uncollected claims or accounts, since upon the termination of the contract plaintiff is no longer under obligation to collect them, except, perhaps, the unauthorized ones which the contract binds him personally to pay. However, as we have seen, defendant never relinquished under the contract its claims to the same accounts and, therefore, it may proceed to collect them in the customary manner of conducting its business, and which was by the successor of plaintiff as representative of defendant in the conduct of its business within the same territory. Following that custom in this case it paid to plaintiff's successor the retained ten per cent. amount over and above expenses of collection on all accounts that were collected since the termination of the contract. It is true that after making that payment to the successor of plaintiff it demanded of him the repayment to it of the amount paid him, but not until after it became aware that plaintiff was placing a different interpretation upon the contract and demanding from it the $336.89 sought to be recovered in this action. It is clear-

ly shown that such request of plaintiff's successor was made by defendant, not because of any authorized interpretation of the contract unfavorable to its construction as now made and as reflected in the settlement it made with plaintiff after the contract was terminated, but because it desired to hold the amount paid to such successor until the controverted questions could be determined. Defendant proved by its testimony that when plaintiff was originally employed in 1932 he received similar payments as the successor to defendant's prior agent in the same territory, but which he denies, although the proof strongly supports defendant's testimony upon that issue.

Again counsel insists that the parties by their conduct while the contract was alive and in operation construed it as now insisted upon by plaintiff, and that, since (as they claim) it is ambiguous, the interpretation of the parties should prevail, and authorities are cited in support of that proposition and with which we are in complete accord; but a necessary premise for that conclusion, and consequential application of that principle of law, is that the contract sought to be construed is ambiguous; but we have pointed out there is no ambiguity in this contract. In addition thereto, the eighth paragraph of the contract says: "The right of either party to require strict performance by the other hereunder shall not be affected by any previous waiver, forbearance or course of dealing." Therefore, the contemporaneous construction contended for, if in all respects applicable (but which we have found is not true), would still not prevail in the face of that stipulation to the contrary. Viewing the case as a whole we are constrained to the conclusion that the court erred in rendering judgment for any amount in favor of plaintiff, but should have dismissed the petition.

Wherefore, for the reasons stated, defendant's motion for an appeal is sustained, and the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.